IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                      Case Nos.:    1:16cv207/MW/GRJ
                                                       1:14cr23/MW/GRJ

PATRICIA LORD

---

## REPORT AND RECOMMENDATION

This matter is before the Court upon Petitioner's Amended "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody" with memorandum in support (ECF No. 70), the Government's Response (ECF No. 89); and Petitioner's Reply (ECF No. 92). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fᴇᴅ. R. Cɪᴠ. P. 72(b). After a review of the record, the arguments presented and an evidentiary hearing, the Court concludes that the § 2255 Motion should be denied. *See* Rules 8(a) and (b) Governing Section 2255 Cases.

# I.  BACKGROUND

On September 23, 2014, a grand jury indicted Petitioner with possession with intent to distribute 28 grams or more of a mixture containing cocaine base, commonly known as "crack cocaine," marijuana, and cocaine, in violation of 21 U.S.C. §§§§ 841(a)(1), 841(b)(1)(B)(iii), 841(b)(1)(C) and 841(b)(1)(D). (ECF Nos. 1 & 2.) Petitioner hired attorney Nick Zissimopulos to assist in her defense. (ECF No. 12.) Petitioner, through counsel, filed a motion to suppress evidence in this case, which the Court denied on March 17, 2015. (ECF No. 27.)

On June 9, 2015, Petitioner pleaded guilty to the charge pursuant to a plea-bargain agreement. (ECF No. 42.) Thereafter, a United States Probation Officer prepared a Pre-Sentence Investigation Report ("PSR"). (ECF No. 64.) The PSR assessed a base offense level of 24 pursuant to U.S.S.G. § 2D1.1, based upon the type and quantity of drugs possessed. *Id.* at ¶ 18. The PSR further found that Petitioner was a Career Offender pursuant to U.S.S.G. § 4B1.1(b)(2). *Id.* at ¶ 24. After adjusting downward three levels for acceptance of responsibility, Petitioner's Total Offense

Case Nos.: 1:14cr23/MW/GRJ; 1:16cv207/MW/GRJ

Level was 31. *Id.* at ¶ 27. Pursuant to 21 U.S.C. §§ 841(a)(1) and

(b)(1)(B)(iii), Petitioner's statutory mandatory minimum sentence was five

years of imprisonment and her maximum was forty years. *Id.* at ¶ 91.

Based on a total offense level of 31 and a criminal history category of VI,

Petitioner's Guideline imprisonment range was 188-235 months. *Id.* at ¶ 92.

On January 7, 2016, United States District Judge Mark E. Walker

sentenced Petitioner to ninety months of imprisonment and a three-year

term of supervised release. (ECF No. 65.) Petitioner did not appeal her

conviction and sentence to the Eleventh Circuit Court of Appeals.

On June 20, 2016, Petitioner executed the instant Amended § 2255

Motion, asserting the following ground for relief:

1) Petitioner's guilty plea was involuntary based on counsel's ineffective assistance in failing to investigate the circumstances of her case, counsel's unwillingness to prepare for trial, and counsel's failure to adequately advise her as to the Sentencing Guidelines;

2) Counsel rendered ineffective assistance for failing to properly challenge Petitioner's Career Offender enhancement; and

3) Counsel rendered ineffective assistance for failing to file a notice of appeal as directed.

(ECF No. 70.) The Government filed a Response, along with a sworn

affidavit completed by Mr. Zissimopulos. (ECF No. 89.) In the affidavit, Mr.

Case Nos.: 1:14cr23/MW/GRJ; 1:16cv207/MW/GRJ

Zissimopulos asserts he discussed the decision of whether or not to file an appeal with Petitioner but Petitioner ultimately told him she did not want him to file an appeal. (ECF No. 89-1.) Petitioner filed a Reply alleging that, during a telephone conversation on January 20, 2016, she instructed Mr. Zissimopulos to file an appeal, but he failed to do so. (ECF No. 92 at 2.)

Having found that Petitioner alleged facts that, if proven true, may entitle her to relief, the Court held an evidentiary hearing on April 25, 2018, in Gainesville, Florida, to resolve the sole issue of whether or not Mr. Zissimopulos ignored Petitioner's specific instruction to file an appeal. Both Petitioner and Mr. Zissimopulos testified regarding their attorney-client relationship and their communication regarding the appeal. The Court reserved ruling on the issue at the hearing and now issues this Report and Recommendation.

## II.   DISCUSSION

### A. General Legal Standard

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to Section 2255 are extremely limited. A prisoner is entitled to relief under Section

2255 if the court imposed a sentence that: (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a Section 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36

Case Nos.: 1:14cr23/MW/GRJ; 1:16cv207/MW/GRJ

F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided

adversely to a defendant on direct appeal, it cannot be re-litigated in a

collateral attack under Section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation

omitted). Broad discretion is afforded to a court's determination of whether

a particular claim has been previously raised. *Sanders v. United States*,

373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different

factual allegations . . . or supported by different legal arguments . . . or

couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under Section 2255 is not a substitute for

direct appeal, issues which could have been raised on direct appeal are

generally not actionable in a Section 2255 motion and will be considered

procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*,

523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195

(11th Cir. 2011). An issue is "'available' on direct appeal when its merits

can be reviewed without further factual development." *Lynn*, 365 F.3d at

1232 n.14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the

ground of error was unavailable on direct appeal, a court may not consider

the ground in a Section 2255 motion unless the defendant establishes (1)

cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.

Case Nos.: 1:14cr23/MW/GRJ; 1:16cv207/MW/GRJ

*Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529

U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th

Cir. 2013). In applying *Strickland*, a court may dispose of an ineffective

assistance claim if a defendant fails to carry his burden on either of the two

prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d

1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th

Cir. 2000) ("[T]he court need not address the performance prong if the

defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court

must, with much deference, consider "whether counsel's assistance was

reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688;

*see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir.

2007). Reviewing courts are to examine counsel's performance in a highly

deferential manner and "must indulge a strong presumption that counsel's

conduct fell within the wide range of reasonable professional assistance."

*Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting

*Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d

1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness

of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, a defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable."

Case Nos.: 1:14cr23/MW/GRJ; 1:16cv207/MW/GRJ

*Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*, 466 U.S. at 693). For a court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941

F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899

(11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles

and presumptions set forth above, "the cases in which habeas petitioners

can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at

1313. This is because the test is not what the best lawyers would have

done or even what most good lawyers would have done, but rather whether

some reasonable lawyer could have acted in the circumstances as defense

counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d

1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have

been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent

attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams

v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has

framed the question as not whether counsel was inadequate, but rather

whether counsel's performance was so manifestly ineffective that "defeat

was snatched from the hands of probable victory." *United States v. Morrow*,

977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is

framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

### B. Notice of Appeal

A finding that counsel rendered ineffective assistance by failing to file a notice of appeal as directed by Petitioner would result in the granting of the instant Motion and the re-instating of Petitioner's appeal. Accordingly, because it is a threshold matter, the Court will address Petitioner's Ground Three first.

In *Roe v. Flores-Ortega*, the Supreme Court held that the two-prong test from *Strickland* applies to ineffective assistance of counsel claims based on counsel's failure to file a notice of appeal. 528 U.S. 470, 477 (2000). The *Roe* Court further declared that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477 (citation omitted).

Case Nos.: 1:14cr23/MW/GRJ; 1:16cv207/MW/GRJ

The Eleventh Circuit Court of Appeals has interpreted *Roe* to mean that it is *per se* unreasonable to fail to follow a client's explicit request to file an appeal. *King v. United States*, 250 F. App'x 930, 932 (11th Cir. 2007), citing *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005). Even if the client did not make a specific request to his lawyer regarding an appeal, the court must inquire as to whether the attorney sufficiently consulted with his client about any potential appeal and made a reasonable effort to determine the client's wishes. *Id.*, citing *Gomez-Diaz* at 792. If the attorney did consult with his client, his performance is professionally unreasonable only if he fails to follow the client's instructions. *Id.*, citing *Roe*, 528 U.S. at 478. If the attorney did not consult with his client about the appeal, the court must determine whether there existed an affirmative duty to consult with the client about an appeal. *Id.* Such an affirmative duty exists only when either (1) a rational defendant would want to appeal, or (2) this particular defendant reasonably demonstrated an interest in appealing. *Id.*, citing *Roe*, 528 U.S. at 480.

The evidence presented at the hearing shows the following. Mr. Zissimopulos was admitted to practice law in Florida in 2003 and has

practiced in federal court for more than ten years. *See* ECF No. 89-1 at 1;
Tr. at 4.[1]  At the evidentiary hearing, Mr. Zissimopulos testified that his
relationship with Petitioner was a good one and that they had a lot of in-
person communication and communication via text message and telephone
throughout the course of her representation. Tr. at 18.

Mr. Zissimopulos further testified that, after Petitioner was sentenced
on January 7, 2016, he asked her to remain in the courthouse to discuss
her appellate rights. However, when he exited the courtroom, he
discovered that Petitioner already had left the courthouse. Tr. at 10; *See
also* ECF No. 89-1 at 1.

In support of its Response, the Government proffered "screen shot"
evidence of text message communications that took place between Mr.
Zissimopulos and Petitioner following her sentencing. The text messages
show that, on January 7, 2016 (the date of sentencing), at 12:45 p.m., Mr.
Zissimopulos sent Petitioner a text message that read: "Patricia- please call
me when you can to talk about possible appeals." (ECF No. 89-1 at 1.)
Petitioner responded at 4:58 p.m.: "I'm sorry I forgot to wait will try to call

---

[1] "Tr." Refers to the transcript of the April 25, 2018 evidentiary hearing.

Case Nos.: 1:14cr23/MW/GRJ; 1:16cv207/MW/GRJ

tomorrow." *Id.*

Mr. Zissimopulos again text messaged Petitioner on Tuesday, January 19, 2016, at 1:48 p.m.: "Patricia, I just wanted to touch base with you please give me a call at your earliest convenience to finish up discussing about your case and whether [or] not you want to appeal. Nick Zissimopulos." *Id.* at 2. Petitioner responded at 4:45 the same day: "Will call you tomorrow just seen your message." *Id.*

At the hearing, Mr. Zissimopulos further testified that he spoke with Petitioner on the telephone the following day, on January 20, 2016. (ECF No. 89-1 at 2); Tr. at 11. He testified that he discussed with Petitioner the possibility of appealing but reminded her that her sentence had been approximately fifty percent below the low end of the recommended Guidelines sentence. *Id.* He advised her of the risk that the Government could file a cross-appeal, arguing that her sentence was an unreasonable variance and that she could fare worse if she were re-sentenced. *Id.* Specifically, Mr. Zissimopulos testified as follows:

Q: And after you discussed that matter, what was the decision?

A: Ms. Lord told me she did not want me to file an appeal.

Case Nos.: 1:14cr23/MW/GRJ; 1:16cv207/MW/GRJ

Q: Are you sure of that?

A: I'm certain.

Tr. at 11. Mr. Zissimopulos further testified that, two days after the telephone conversation, on Friday, January 22, 2016, at 5:45 p.m., he created a one-sentence note to himself in the client communication folder he kept in Petitioner's case file that read: "Spoke with Patricia Lord and did not want to file an appeal." *Id.* at 12. He testified that he had no further communication with Petitioner regarding the appeal, although he recalled that Petitioner sent him at least one letter regarding unrelated matters. *Id.* He testified that he first became aware of her allegation that he did not file an appeal as directed when he received a copy of her § 2255 Motion. *Id.* at 13.

For her part, Petitioner testified that her relationship with Mr. Zissimopulos began to sour when he advised her that if she did not plead guilty to the drug possession charge, the Government would bring an additional charge for gun possession. *Id.* at 25. Petitioner further testified that she disagreed with counsel's assessment that there was no basis on which to challenge the Career Offender enhancement applied in her PSR.

Case Nos.: 1:14cr23/MW/GRJ; 1:16cv207/MW/GRJ

*Id.* at 25-26.

Although Petitioner did not directly dispute the text-message
evidence her version of the January 20, 2016, telephone conversation
contradicts Mr. Zissimopulos' testimony. Petitioner testified that, during that
conversation, she told Mr. Zissimopulos that she wanted to appeal the
sentence based on the Career Offender enhancement. Petitioner further
testified that Mr. Zissimopulos advised her that an appeal was not in her
best interest because the Government could prevail on a cross-appeal,
which might result in a higher sentence. *Id.* at 28, 31. Petitioner further
testified that, even though she knew it was not in her best interest to
appeal, she nevertheless expressly told Mr. Zissimopulos to file the appeal
because she did not believe she was a Career Offender. Tr. at 28, 29, 30,
37.

Petitioner further testified that, at the conclusion of the phone call, Mr.
Zissimopulos told her to come to his office to discuss the appeal further and
that she thinks she might have text messaged him or called him about
coming by, but he never got back to her. *Id.* at 29, 30. She conceded she
did not remember exactly what she text messaged him and did not have

evidence of any of the text messages. *Id.* at 29, 30. Later in the hearing, Petitioner testified that she text messaged Mr. Zissimopulos after the January 20 phone conversation asking him if he was in his office and he said "no" and that she had to turn herself in the following day. *Id.* at 32, 37. Finally, Petitioner testified that, although she knew the time for filing an appeal would soon expire, she never followed up with Mr. Zissimopulos again regarding whether or not he had filed the notice of appeal. *Id.* at 30, 37.

Upon careful consideration of the evidence, this Court finds that Mr. Zissimopulos did not run afoul of *Roe* in this case. The evidence establishes without dispute that Mr. Zissimopulos attempted to contact Petitioner via text message twice after her sentencing regarding her decision whether or not to appeal. After having had the opportunity to assess the credibility and demeanor of both Mr. Zissimopulos and Petitioner at the evidentiary hearing, this Court finds credible Mr. Zissimopulos' testimony that, at the conclusion of the telephone conversation on January 20, 2016, Petitioner told Mr. Zissimopulos she did *not* want him to file an appeal. Mr. Zissimopulos' account of the telephone

conversation was further bolstered by his testimony that he made a personal notation in Petitioner's file indicating she did not wish to appeal.

Petitioner, by contrast, provided no evidence whatsoever demonstrating that she directed counsel to file an appeal. Notably, Petitioner testified that although she was aware that the time for filing an appeal would soon expire, she did not follow up with counsel regarding the appeal or file a notice with the Court indicating she wished to appeal before the time for filing expired. It was not until June of 2016---more than four months later---that she first complained about counsel's purported failure to file an appeal when she filed the § 2255 Motion.

In sum, taking into account the credibility of the witnesses the record establishes Mr. Zissimopulos sufficiently consulted with Petitioner about any potential appeal and made a reasonable effort to determine Petitioner's wishes. The Court further concludes that the record further establishes that Mr. Zissimopulos did not ignore a specific request by Petitioner to file an appeal. For these reasons, the Court finds that counsel's performance was not deficient under *Strickland*, and Petitioner's Ground Three is without merit.

Case Nos.: 1:14cr23/MW/GRJ; 1:16cv207/MW/GRJ

### C. Involuntary Guilty Plea

Petitioner's Ground One alleges that counsel's ineffectiveness in
failing to investigate her case, failing to prepare for trial, and failing to
adequately advise her as to the Sentencing Guidelines rendered her guilty
plea involuntary.

The two-prong *Strickland* test applies to challenges of guilty pleas
based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58
(1985). However, "counsel owes a lesser duty to a client who pleads guilty
than to one who decided to go to trial, and in the former case counsel need
only provide his client with an understanding of the law in relation to the
facts, so that the accused may make an informed and conscious choice
between accepting the prosecution's offer and going to trial." *Wofford v.
Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (citation omitted). In this
context, the first prong of *Strickland* requires the defendant to show his plea
was not voluntary because he received advice from counsel that was not
within the range of competence demanded of attorneys in criminal cases.
*Hill*, 474 U.S. at 56-59. To prove prejudice in the context of a guilty plea, a

defendant must show a reasonable probability that, but for his attorney's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 59.

In support of her claim, Petitioner asserts the following:

> Patricia Lord's guilty plea was entered into, based on incompetent counsel, who failed to investigate the circumstances of her case[,] [f]ailed to adequately advise her on the sentencing guidelines[,] and failed to be 'willing' to prepare for trial[.] Because counsel was not willing to prepare for trial, Ms. Lord entered a guilty plea. Had she proceeded to trial with an attorney who is unwilling to prepare for trial, she most certainly would have lost due to lack of preparation. That was a risk that Ms. Lord was unwilling to take. Therefore, her plea was a product of coercion, and this court should take into account that Ms. Lord's pretrial was extensive because she was prepared herself to go to trial, would have gone to trial had her attorney showed a willingness to prepare. But for counsel's unprofessional behavior the result of the proceeding would have been different[.] Ms. Lord would have gone to trial.

(ECF No. 70-1 at 9.) Petitioner's conclusory allegations of ineffective assistance are insufficient to warrant relief. Petitioner fails to allege, much less establish with evidentiary support, what a proper investigation into the circumstances of her case would have revealed, and how such an investigation would have altered the outcome of her proceeding. Petitioner further fails to allege with the requisite specificity what counsel did or did not do that demonstrated an unwillingness to prepare for trial.

Case Nos.: 1:14cr23/MW/GRJ; 1:16cv207/MW/GRJ

Further, although Petitioner alleges counsel failed to adequately advise her regarding the Sentencing Guidelines, Petitioner does not explain how counsel's advice or lack thereof regarding the Guidelines was inadequate or how counsel's alleged deficient performance in this regard prejudiced the outcome of her case.

At the change of plea hearing Petitioner testified under oath as follows:

> The Court: . . . Now I'm going to explain to you the role of the Sentencing Guidelines and then explain to you some things about how sentencing works so you'll know what to expect next. When I refer to the Sentencing Guidelines, I'm referring to a set of rules that the District Judge will consider as advisory in determining the sentence in your case. Have you and Mr. Zissimopulos talked about how the Sentencing Guidelines might be applied to your case?
>
> The Defendant: Yes, sir.
>
> The Court: I don't know if you had any questions but if you did, has Mr. Zissimpulos been able to answer all of your questions?
>
> The Defendant: Yes, sir.

(ECF No. 86 at 15.) The Court went on to explain how the Sentencing Guidelines work and the effect of the Guidelines on Petitioner's sentence. Petitioner made no objection at that time and confirmed on the record that

she understood. *Id.* at 15-16.

"[T]he representations of the defendant, h[er] lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 73-74. Solemn declarations in open court carry a strong presumption of verity. *Id.* at 74. Here, Petitioner's solemn declarations in open court contradict her unsupported, self-serving allegation that Mr. Zissimopulos failed to properly advise her as to the Sentencing Guidelines.

Finally, Petitioner's allegation that her plea was involuntary is directly belied by the record. Petitioner executed a Plea Agreement and Supplemental Plea Agreement, both of which state that she pleaded guilty "knowingly, voluntarily, and upon advice of counsel." (ECF No. 42 at 5; ECF No. 43 at 4.) Moreover, Petitioner testified at her change-of-plea hearing as follows:

> The Court: Okay. I will find that there is a factual basis for your plea of guilty to the charge in Count One of the indictment. Now your decision to plead guilty here this afternoon, is it being made freely and voluntarily?
>
> The Defendant : Yes, sir.

Case Nos.: 1:14cr23/MW/GRJ; 1:16cv207/MW/GRJ

The Court: Has anyone threatened you, coerced you,
forced you or intimidated you in any way regarding your decision to plead guilty?

The Defendant: No, sir.

The Court: As a result of any discussions between you or your attorney and the attorney for the government or anyone else, are you relying on any agreement, promise, or understanding concerning how your case will be handled or what sentence will be imposed if you plead guilty other than what the government has agreed to do in the plea agreement and supplement to plea agreement? In other words, is there anything else that the government has agreed to do or any other promise the government has made you other than what's in the plea agreement or supplement to the plea agreement that has caused you to plead guilty here this afternoon?

The Defendant: No, sir.

The Court: And, Mr. Zissimopulos, as counsel for Ms. Lord, can you assure the Court that as far as you know, there have been no assurances, promises, or understandings given to your client as to the disposition of her case which are different or contrary to what's in the plea agreement?

The Defendant: No, sir.

The Court: And, Mr. Lindsey, can you provide the
Court with the same assurances on behalf of the government?

Mr. Lindsey: Yes, sir.

The Court: Now, lastly, Ms. Lord, you have been represented throughout this case by Mr. Zissimopulos. Are you satisfied with your lawyer and the way he is representing you, thus far?

The Defendant: Yes, sir.

The Court: And have you had enough time to discuss your case fully with your lawyer and tell your lawyer everything you know about your case?

The Defendant: Yes, sir.

The Court: And do you fully understand all of the rights and procedures that you waive and give up by pleading guilty?

The Defendant: Yes, sir.

The Court: And lastly, Ms. Lord, have you indeed told the truth to the Court this afternoon?

The Defendant: Yes, sir.

The Court: Now, lastly, having heard everything I have said and everything I have advised you of, is it your final desire to plead guilty to the charge in Count One of the indictment?

The Defendant: Yes, sir.

*Id.* at 22-24. Petitioner fails to overcome the record evidence demonstrating that counsel rendered constitutionally adequate assistance and that she entered into a knowing and voluntary guilty plea. Accordingly, because Petitioner fails to demonstrate counsel was deficient or that she was prejudiced as a result, Petitioner fails to carry her burden under *Strickland* as to Ground One.

Case Nos.: 1:14cr23/MW/GRJ; 1:16cv207/MW/GRJ

### D. Career Offender Enhancement

In Ground Two, Petitioner argues that counsel was ineffective for
failing to properly challenge the Career Offender enhancement. According
to Petitioner, Mr. Zissimopulos should have argued that Petitioner's prior
convictions for burglary of a dwelling and aiding and abetting do not qualify
as crimes of violence under the Guidelines. Petitioner further asserts that
counsel should have argued that the Supreme Court's decisions in
*Johnson v. United States*, 135 S. Ct. 2551 (2015) and *Taylor v. United
States*, 495 U.S. 575 (1990) render her Chapter Four enhancement invalid.

Section 4B1.1 of the Sentencing Guidelines provides that a defendant
is a "Career Offender" if (1) the defendant was at least eighteen years old
at the time the defendant committed the instant offense of conviction; (2)
the instant offense of conviction is a felony that is either a crime of violence
or a controlled substance offense; and (3) the defendant has at least two
prior felony convictions of either a crime of violence or a controlled
substance offense.

The PSR applied a sentencing enhancement pursuant to § 4B1.1

based on at least two prior convictions for sale of cocaine in violation of

Section 893.13(1) of the Florida Statutes (Cause Nos. 2004-CF-838-A;

2005-CF-164-A, and 2006-CF-114-A). (ECF No. 64 at ¶ 24.) The law in this

circuit is well-settled that a conviction under Section 893.13(1) of the

Florida Statutes is both a "serious drug offense," 18 U.S.C. § 924(e)(2)(A),

and a "controlled substance offense," U.S.S.G. § 4B1.2(b)). *United States*

*v. Smith*, 775 F.3d 1262, 1265-68 (11th Cir. 2014).

    Neither *Johnson* nor *Taylor* render invalid Petitioner's Chapter Four

enhancement. In *Johnson*, the Supreme Court held that the residual clause

of the Armed Career Criminal Act ("ACCA") is unconstitutionally vague.

Petitioner, however, was sentenced as a Career Offender under the

Sentencing Guidelines, not the ACCA. In *Beckles v. United States*, the

Supreme Court held that the advisory Sentencing Guidelines are not

"subject to vagueness challenges under the Due Process Clause." 137 S.

Ct. 886, 890 (2017). Accordingly, *Johnson* provides Petitioner no relief.

    In *Taylor*, the Supreme Court held that a burglary, for the purpose of

an enhancement under the ACCA, includes any crime, regardless of its

exact definition or label, having the basic elements of unlawful or

unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime. Because Petitioner was found to be a Career Offender based on prior drug convictions, *Taylor* is inapplicable here and warrants no relief.

Accordingly, because Petitioner's Career Offender enhancement was valid based on at least two prior controlled substances offenses and because neither *Johnson* nor *Taylor* are applicable to Petitioner's case, counsel was not deficient for failing to challenge the Career Offender enhancement on these grounds. Moreover, Petitioner cannot demonstrate she was prejudiced as a result. Accordingly, Petitioner fails to meet her burden under *Strickland* as to Ground Two.

### III. CONCLUSION

For all of the foregoing reasons, the Court concludes that Petitioner has not shown that she is entitled to § 2255 relief. Therefore, Petitioner's Motion should be denied.

### CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when

Case Nos.: 1:14cr23/MW/GRJ; 1:16cv207/MW/GRJ

it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.    The Amended "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody," ECF No. 70, should be **DENIED**.

2.    A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 11th day of May, 2018.

*/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.